Good morning, Your Honors. May it please the Court. R. Anthony Rupp on behalf of the Plaintiff Appellants. I know Your Honors are familiar with the standard for prevailing party legal fees claim under Section 1988, but I wish to remind the Court it's a generous formulation, the touchstone being that the prevailing party must materially alter the legal relationship between the parties in a manner that Congress contemplated when it passed Section 1988. Preliminary injunctions count. We know that from the Haley v. Pataki case from this Court in 1997. And we know that unless the preliminary injunction is undone on the merits later on in the case, that the preliminary injunction will stand up as a basis for a fee application. Now in this case... Preliminary injunctions don't always count though, right? They can count. They can count, Your Honor. Under Sol, Justice Ginsburg of the Supreme Court said that they would not count under a couple of different circumstances. One would be if the underlying hearing on the preliminary injunction was hasty and not on a developed record, which was not the case here. And the second instance would be, of course, when the preliminary injunction is overturned on appeal or does not result in a permanent injunction. So you're saying this was not hasty here? I mean, it was a relatively compressed briefing schedule, wasn't it? Well, Your Honor, it was a compressed briefing schedule, but the two separate times before Judge Sotheby and had four hours of oral arguments, submitted over 150 pages of written materials, hundreds and hundreds of pages, if not over a thousand pages of exhibits. The State of New York was represented by the Attorney General's office, called two expert witnesses who presented, and this was during COVID, but presented affidavits before Judge Sotheby. Why isn't this the classic example of a transient victory? But for the wedding, the stay was entered very quickly, right? Actually, Judge, it was not. The stay was not entered quickly, and that's important under the case that I cited that is directly on point. I realize it's not. Okay, but nothing, there would have been no victory. There would have been no changing of the legal relationship before the stay, right? But for the fact that the wedding happened to be, the State didn't have time to get a stay, right? Judge, they did have time, and they achieved a stay about, it was, the decision came down on August 7th. But they didn't achieve their stay until August 21st, which is an important period of time, as the Kilpatrick case mentioned. And I realize it's not binding on this court. It's a district court case. However, it is exactly on point. That's exactly what happened in that case. It was a wedding. The marriage never happened between the parties. But that's not exactly on point, because in that case, they ultimately got a permanent injunction, right? No, they did not, Judge. They, the case was, the case was mooted on appeal when one of the parties died. Right, but they got, it was mooted on appeal, but below, in the district court, they did get a permanent injunction that was then appealed. So, there was a permanent victory that got mooted out on appeal. Well, Judge, if- You have no case in the history of the United States, I think, you can tell me if I'm wrong, but I couldn't find one, where a preliminary injunction was granted, a stay was obtained, stopping that injunction, and the, the litigant was found to be a prevailing party. Which case would you cite for that? Judge, I would cite the Doe versus Crane case, which was one of the Halloween statute cases that featured in our briefing. In that case, the party got a- That's the Fifth Circuit case? I'm sorry, no, Your Honor, these were district court cases that we cited because they were factually directly on point. But outside of the circuit, yeah. But wasn't the Doe v. Nixon case on point? Why wouldn't that case be on point? Well, in, in Doe v. Nixon- That was a permanent injunction that was stayed and then got, you know, they never got a chance  The salient difference between Doe v. Nixon and Doe v. Crane, as well as the Kilpatrick case, was that in Doe v. Nixon, the permanent, the preliminary injunction never took effect. There was never a period of time where the legal relationship between the parties was altered. In Doe v. Crane and in the Kilpatrick case, which is directly- Let's just take the plaintiffs you have here separately for a moment. The ones that did not get married, I forgot their names, but- They were Gillia and Durelek. So they would be exactly the Doe v. Nixon case because they're, they never got to act out on the- Judge, respectfully, they would be exactly the Kilpatrick case. They could have been in the state, they had an injunction in their favor that allowed them to get married. And in the Kilpatrick case, one of the parties that was going to get married died, but the court found it significant that the legal relationship had been altered and he could have been married in what, in that case, was a three-week period. The only difference factually between that case and ours is that ours was a two-week period, in which time the DiMartilli and Crawford parties did get married. So the legal relationship between the parties was altered by the preliminary injunction. Under your rule, I think, if it's a First Amendment case and someone gets an injunction so that they're allowed to go out and speak at a location, if they are able to do that for any period of time, even if it gets completely undone as soon as possible by the circuit court, they instantly become prevailing parties because they went to the park and spoke for one day or two days. Well, Judge, the issue of whether or not a preliminary injunction changes the, alters the legal relationship between the parties and is sufficient for prevailing party status was not only endorsed by this court in the Kirk case, it was endorsed by the Supreme Court in Justice Ginsburg's decision in the Soule case. She said only if the preliminary injunction is issued on a undeveloped and hasty record. This was a fulsome and complete record consisting of thousands of pages, expert witnesses, representation. Now, we still have a circumstance in which the record suggests strongly, like, as though there were deliberate maneuvers to avoid appellate review of the merits decision that was made by the district, the preliminary merits decision made by the district court, including the kind of last minute decision that was pressed because of the planned wedding and that didn't allow the state to appeal. The state, you know, seeks review and obtains a stay in this court and then the other parties who are planning to be married announce unexpectedly that they changed their plans and so by virtue of their action, the appeal becomes moot. Judge, that is entirely not true. The second party had sued for a wedding date of a date certain with 175 people. That wedding was supposed to take place on August 22nd. The state has argued that they should have just turned around and gotten married three days later and just had all their guests stay over somehow or be available. They had a date certain. That's what we sued for. When the state got the provisional stay out of Judge Chin from this court, we wrote to this court and we said they're trying to reschedule. They might be able to do it one week later on the 29th and then we couldn't get a hearing from a three-judge panel on the stay out of this court and they said, look, if we can't go through this again, we had all our invitations out, our flowers, our wedding, our videographer, our cake. We've got to wait until the state- Nonetheless, there was urgent litigation before the district court and then before this court requesting merits decision and that review of the merits decision of the district court on which much turns with respect to prevailing party status was mooted by the action of your clients, wasn't it? It was not mooted by the action of our clients, Your Honor. It was mooted by the actions of the state in getting a stay that prevented them from getting married on their wedding day. And if I may point out to the court, it is very clear under Article III that this court cannot reconsider the underlying merits of the district court decision. There's any number of cases- Let me ask another question about that then because the district court, as I read his statement, revisited the merits in some respects on the fee award- Which he could not do. But said also that he adopted the reasoning offered by the state in its brief, which included the position that even if your clients were treated as or considered properly to be prevailing parties, as to which we might differ, that an award of fees would be unjust and therefore in his discretion, he would not be awarding fees. Judgment. So you're not entitled to fees, are you, as prevailing parties? Judge, I'm not entitled as discretionary on the part of the district court judge. But what the district court judge did here was something he could not do. He read the tea leaves from this court's stay, which was not a merits decision, and concluded that perhaps his decision was wrong. Then, in contravention of Article III of the Constitution- We have to make a, we have to assess the likelihood of success on the merits in making a stay determination, don't we? Yes, Judge, but the court- But Judge, a court sitting on a prevailing fees, on appeal on a prevailing fees, cannot go back and make an advisory ruling about who would prevail. But it's more basic than that because the relief that you got was stopped by the circuit. Regardless of how the factors were balanced, the bottom line is the victory was stopped and never- Judge, it was not. My client, two of my clients got married. They were the only wedding in New York State that was in excess of 50 people. It's only because it happened in the interim that there was, that can't be, we know from Seoul the fact that they, in Seoul, they went on the beach and they had the performance on the beach, right? So we know just the fact that your clients went to get married is not enough to say they have to be prevailing parties because they went forward. Because in Seoul, they went forward and the Supreme Court said, still, no, you didn't prevail even though you got to go on the beach for that limited period of time. Or am I missing something? I see my time is up, Your Honor. Your Honor, Seoul is the second set of circumstances that Judge Ginsburg said that the Supreme Court was not addressing in that case. It's what we have here. When there was a period of time under the preliminary injunction, when the legal relationship between the parties was altered, and here it was altered to the extent that Crawford and DiMartilli were able to get married. In Seoul, wasn't it altered for a period of time in Seoul? Yes. It was not altered for a period of time that allowed the plaintiff there to avail themselves of their legal remedy. They went to the beach in Seoul. They did. Your Honor, there are any number of cases that say that a preliminary injunction rendered on a fulsome and complete record is sufficient for prevailing party circumstances. The DiMartilli and Crawford plaintiffs got all the relief they asked for in the complaint. They could not have gotten any more. They got married on the date that they sued, and that's what they asked for. They are, indeed, the prevailing party. And the only reason they wouldn't be is if the court were to determine that Judge Sotheby did that on a less than complete record. But the record there was incredibly robust, far more robust than other cases in which the record has been found to be sufficiently complete. If the presider will allow it. And what about the other three plaintiffs? Judge, the other three plaintiffs, and that's why I relied so heavily on the Kilpatrick case, which, again, I recognize is not binding authority. But in that case, one of the parties had a result that's similar to what Gilea and Durelek had, which was they could get married. While the case was on a voluntary stay, one of them died, which mooted the case. Same circumstance. The court was then asked to determine... Well, just tell me, just answer directly, what benefit, what part of the legal relationship between Mr. Chimendra and the state was altered? Mr. Chimendra, Your Honor, I will give up Mr. Chimendra at this point, the Reverend. But Durelek and Gilea could have been married, and that was what the court in Kilpatrick said was the critical thing. And that's why that court awarded legal fees to that party, even though the stay was in effect, the case mooted out, and they never got married. And that court said they were entitled to fees. Thank you, Your Honor. May it please the Court, Frederick Brody for the State Defendants. Plaintiffs are not entitled to fees here. The reason is simple. The preliminary injunction, or P.I., on which plaintiffs base their fee claim was stayed by this court on defendant's motion two weeks after it was issued. The stay was never lifted. The P.I. never again became effective. Because of the stay, defendants, not plaintiffs, prevailed. Now, the Supreme Court has clarified the notion of prevailing party in two ways that are critical here. First, in C.R.S.T. Vann, the court explained that a defendant need not obtain a favorable judgment on the merits in order to be a prevailing party. Instead, defendants prevail when the plaintiff's challenge is rebuffed, regardless of whether that decision's on the merits. Second, in Soll v. Weiner, the Supreme Court held that deciding who's a prevailing party, when you're doing that, cases must be treated as a unit, not in stages. And that's very important. Soll was instructive. As Your Honors know, there was a nude performance on a public beach. They were able to stage the nude performance by virtue of a P.I. But Supreme Court held that change didn't support a fee award because it wasn't enduring. That's despite the fact that the performance took place. Now, the district court in Soll ultimately granted judgment on the merits. But Soll's reasoning applies equally, whereas here, a P.I. is nullified by an interlocutory ruling. Here, the district court issued a single, unitary P.I. order. This court stayed that unitary order. Because of the stay, the piece of paper under which DiMartilli and Crawford had acted was no longer effective after August 21. So it sounds like from your argument that you would concede if there's not a stay, and you appeal the case, but there was no stay, and the weddings went forward and mooted the case, that they would be prevailing parties, even though there was not any type of final determination. Would you concede that? That's right, Your Honor. The key is the stay. From what I'm hearing you're saying, the key is the stay, right? The key is the stay, yeah. I mean, what you're describing, Your Honor, is Haley against Pataki, where we lost in the district court. We tried for a stay in the district court. We lost that. We tried for a stay in the Second Circuit. We lost that. We lost every time. So, obviously, plaintiffs prevailed in Haley against Pataki. But not so here. Here, as soon as we were able, we got a stay. And remember C.R.S.T. Vann, doesn't matter whether the stay's on the merits. We blocked them from going forward. And it doesn't matter that someone was able to go forward before you got the stay. That's right, because of Sol V. Weiner. Sol V. Weiner tells you, no, you look at the case as a unit. You don't look at the case in stages. Maybe the first couple getting a P.I., that was stage one. But you have to go on under Sol V. Weiner and look at stage two. Stage two is... With respect to the stay, we've applied a flexible standard on granting stays, looking both at the likelihood of success on the merits as well as the operable harm and other aspects of the case. We have a kind of mix of standards that applies. Are you saying that we should focus on inferring a skepticism about the merits of the claim from the entry of the stay? Or do you acknowledge that there are other factors that go into whether to grant a stay? Well, no. Obviously, there are four factors that the court had to consider. And the case that this court cited in its stay order, World Trade Center, said those four factors must be balanced. But one of those factors, and the factor the Supreme Court says is most critical, was whether defendants made a strong showing on the merits. So indeed, World Trade Center vacated a stay because it found defendants' likelihood of success had diminished. So I would say that even when you balance the four factors, likelihood of prevailing on the merits is in there, and it's an important one. But I would also add this. CRST then, U.S. Supreme Court, says defendants to win, they don't need to prevail on the merits. All we need to do as defendants is to block the plaintiffs. And we did that. We blocked the PI. Now, the Crawfords... So some of the cases that talk about whose fault it is, you don't think that's the critical part of the analysis. In other words, even if the plaintiffs move forward, in other words, they don't have to wait to get married. If they moot the case out because they decide, assuming there's no stay, that wouldn't be problematic in your view? That they just decide, you know what, we've got the preliminary injunction, there's no stay, we're going to move forward, we're going to moot this case out, we're going to get prevailing, we'd be the prevailing party. That would be okay under your analysis, I think, right? Because there was no stay. Right. And in that hypothetical situation, we would have argued that the exception to mootness applied. Because when you think of it, if you think of Mr. Rupp's argument, he says, because we got a stay, we mooted their case. So you've got a classic, classic case for the mootness exception. If we don't get a stay, the wedding goes forward, and it's mooted. If we do get a stay, according to Mr. Rupp, it's mooted because of the stay. That's your evanescent, vanishing, I forget the exact word, but it goes away quickly. Ephemeral and transient. Ephemeral and transient. Thank you, Your Honor. If we were looking at what the district court decided, it said the Second Circuit accordingly made a determination on the merits, meaning the preliminary injunction was reversed, dissolved, or otherwise undone. If we understood our stay ruling to be somewhat more ambiguous than that, and determined that the district court had made an error of law in understanding the effect of the stay ruling, would we need to remand to the district court for a reassessment of whether, in its discretion, to award fees? If we were to decide that, in fact, your opponents were prevailing parties, at least in part, and the district court erred in its opposite conclusion, would we be able to make a decision about a fee award, or would we have to remand to the district court to determine? Do you understand my question? Yes, I do. And the district court didn't reach the amount of fees. No, I'm not talking about, I'm talking about whether or not, because we have the initial eligibility determination, is your opponent a prevailing party? And then, if the opposing party is a prevailing party, the question whether to make a fee award is committed to the discretion of the district court, looking at various factors about whether it would be just to award fees, for example. That's right, so it would go back to the district court. It would have to go to the district court in the first instance, you think? Yes, I think, because they would exercise, ordinarily, they would exercise that discretion in the first instance. And I believe when you have a discretionary determination in the district court, this court's practice is to send it back to the district court. Well, I was interested in that, because the district court's decision said that it was accepting all of the state's arguments, including as to the justice or not of a possible award, and then offered its additional views as a supplement. So one could read that in a couple of different ways, I suppose. Well, right, but Your Honor was asking me if there was a legal error determined to have been made. Yes. And, you know, obviously the legal error could be found to have been of no effect, but I don't know what legal error there would have been. Under C.S. R.S.T. Vann, we stopped them, doesn't matter if it was on the merits. Under Soule v. Weiner, it's ephemeral, and you have to look at the case as a unit. As a unit, we blocked the P.I. We won that. And Gilpatrick — Well, hang on just a second. And how are we to look at the fact that the one couple, de Bartile, did get married? Well, that is — well, first of all, as far as marriage goes, we weren't seeking to block them from getting married. We were seeking to block them from having a reception with over 50 people, and that was the big COVID risk. But the answer is that it was ephemeral. You know, the reception — They had the wedding. I mean, they did obtain a court order that allowed them to have the wedding as they wished. Isn't that right? That is correct. So at 4.18 p.m., the order issues. Then the wedding's over by 11 p.m., so you've got 6 1⁄2 hours in which the P.I. was in effect. After that 6 1⁄2 hour gathering, the Crawfords were back to the status quo ante. They couldn't hold another reception. The P.I. was limited to that reception. So it was — again, it was short-lived. It was ephemeral. And it was like a little blip. They won a temporary victory, but two weeks later — In their relief, they were seeking a declaratory judgment and a permanent injunction. There was more to the case than just that, in other words, right? They didn't get any of that. No. They had their reception, but that's like the nude sculpture on the beach. With the Chief's permission, if you could distinguish the Gilpatrick case for a moment. I would like to distinguish Gilpatrick. It's an unreviewed, unpublished district court decision that's never been cited by any court for any reason. Aside from that, first, the stay in Gilpatrick — there was a stay in Gilpatrick, but it was granted without opposition. So the court didn't consider the party's likelihood of success on the merits. That's at Gilpatrick District Court ECF number 68 at 4. The district court just says, well, there's no opposition, so I'm granting the stay. It was stipulated. Second, Gilpatrick was mooted by death, not by the plaintiff's voluntary action, as happened here. And plaintiffs indeed did voluntarily moot their case. And it was a diary entries at page 1117. That would go against — we haven't mentioned the Kirk case, but the Kirk case is one that dealt with licenses for veterinarians, whether you had to be a citizen or non-citizen. In that case, there was a plenary injunction, and ultimately the plaintiffs became permanent resident citizens and mooted it out because their status changed. You wouldn't argue that they had to turn down their permanent resident status in order to keep the case going. We don't think that was — the plaintiffs voluntarily mooting it out because they went forward with their immigration, you know, status, right? No. Kirk case, different from this case because there's no stay. We apply for a stay in the district court in Kirk. I know, but I was just commenting on this idea that they voluntarily mooted it out by having, you know, by having the wedding. I'm not sure that that's consistent with the Kirk. The voluntary mooting out is really Jiglia and Gorelick. The wedding, the Demartillion-Crawford wedding, it's six hours, all right? If that's not fleeting under Sol, I don't know what is. All right. Thank you. Your Honors, the fleeting nature of Sol that Judge Ginsburg was talking about is the lead-up to the issuance of the preliminary injunction. It is whether there is sufficient time for the issues. The court wrote, at the preliminary injunction stage, the court is called upon to assess the probability of plaintiff's ultimate success on the merits. The foundation for that assessment will be more or less secure depending on the thoroughness of the exploration undertaken by the parties in the court. In this case, Judge Ginsburg wrote, the preliminary injunction hearing was necessarily hasty and abbreviated. There was no time for discovery or adequate review. Our situation is exactly the opposite. The parties briefed the case extensively. The entire Attorney General's office came in on the side of the state defendants. Judge Crawford, or I'm sorry, Judge Sotheby held four hours of oral argument. He wrote detailed decisions, 20 pages of single-spaced decisions that are before this court. It was anything but the situation in Sol. So, under your theory, if it was in place for hours, for hours, but he ran up to the circuit court and he got a stay, but it was in place for hours, but there was a thorough briefing of it prior to that, you would say that's prevailing? That is what the authority in multiple circuits and the Supreme Court says, Judge, and I believe it's fair for this reason. If what Your Honor is suggesting is true and it became the law in the Second Circuit, it would mean that no party that came into court seeking emergency relief could ever be the prevailing party if the state later got a stay and then mooted the case out, which they did by... But the key would be that they can't moot it out. If they moot it out, that would be a problem. Judge, they changed the guidance from orange to yellow, and my clients said we can't... That didn't moot out this case. Our summary order said the case was mooted out because your clients decided they weren't going to go forward with the wedding. Not true, Judge. They couldn't go forward on the day their wedding was scheduled. If anybody's tried to schedule a 175-person wedding... I know, but that had nothing to do with the change in the guidance. It did, Your Honor. We wrote to the court and said they were going to try to reschedule, and then the state changed the guidance. It was a moving target, and my clients, despite us begging them to, said we cannot do this anymore. We cannot try to reschedule and have a court tell us the night before our wedding, as happened here, that we can't get married again. We can't have 175 guests stand them up like that again. That was not our fault, Judge. That was the state changing the guidance. I'm sorry, it's your fault, but this is not a case like in Haley where the state just gave up. But there's a suggestion here, Judge, that there was gamesmanship. We tried to keep the juror-like giglia wedding on, and they could not go forward with it because of the difficulty. Everybody here has attended large weddings. You don't schedule them on a dime. They've said, oh, well, why don't you have it next week or the week after? That's not the standard, Judge. That's not what Judge Ginsburg said in Seoul. That's not what the other circuit courts of appeal that have addressed this issue directly have said, and it's not what the courts found in Gilpatrick under identical facts. I ask that Your Honor is reversed. Thank you. Thank you both. Nicely argued.